(April 8, 2010)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMAR F. GILMORE, Also Known as COOL, Appellant. [898 NYS2d 717]—

Stein, J. Appeal from a judgment of the County Court of Cortland County (Campbell, J.), rendered November 17, 2006, upon two verdicts convicting defendant of the crimes of criminal possession of a controlled substance in the fourth degree and criminal sale of a controlled substance in the third degree (two counts).

Defendant was indicted on one count of criminal possession of a controlled substance in the fourth degree (hereinafter the first indictment) based upon his possession of cocaine on December 2, 2005. He was subsequently indicted on two counts of criminal sale of a controlled substance in the third degree (hereinafter the second indictment) arising out of his sale of cocaine on January 16, 2006. Defendant was convicted of all charges after two separate jury trials and he now appeals.* Finding no merit to defendant's various arguments on appeal, we affirm.

Initially, we find that County Court properly denied defendant's motion for a *Mapp/Dunaway* hearing under the first indictment as the motion failed to set forth any sworn allegations of fact supporting the grounds for the application (*see* CPL 710.60 [1]; *People v Lopez*, 5 NY3d 753, 754 [2005]; *People v Mendoza*, 82 NY2d 415, 422 [1993]).

Nor do we find error in County Court's admission of the cocaine into evidence in the trial pertaining to the first indictment. Contrary to defendant's contention, the People established a sufficient chain of custody of the cocaine allegedly possessed by him. According to the testimony of patrolman Eric Nilsson, after defendant was taken into custody, Nilsson conducted a pat search of defendant's person, during which "a clear plastic container fell on the floor" as Nilsson shook defendant's pants. At trial, Nilsson confirmed that the cocaine offered in evidence was "the stuff that fell out of [defendant's] pant leg" during the pat search. The testimony of Lieutenant Paul Sandy also described the procedures in place at the police department for securing and handling evidence and established that those procedures were followed in this case. Sergeant Michael Nichols then testified regarding his transportation of the evidence from the police station to the State Police crime laboratory. In addition, the People presented the testimony of John Pierce, a forensic scientist with the State Police, regarding the handling and testing procedures followed once the evidence was received by the crime lab.

Taken as a whole, the testimony amply demonstrates "that

---

* Although there were two separate trials, there was only one judgment of conviction.

there existed 'reasonable assurances of identity and unchanged condition' " (*People v Julian*, 41 NY2d 340, 343 [1977], quoting *People v Porter*, 46 AD2d 307, 311 [1974]) of the substance offered in evidence at trial so as to establish that it was cocaine and that it was secured from defendant. Thus, County Court properly admitted the cocaine into evidence (*see People v Julian*, 41 NY2d at 343; *People v Harris*, 29 AD3d 1027, 1028 [2006]). Defendant's assertions that the chain of custody was broken by certain gaps in time when the evidence was allegedly unaccounted for and that the integrity of the evidence was impaired by differences in weight before and after the substance was tested relate to the persuasive effect to be accorded to the evidence by the trier of fact, not to its admissibility (*see People v Bellamy*, 34 AD3d 937, 939 [2006], *lv denied* 8 NY3d 843 [2007]; *People v Valderama*, 25 AD3d 819, 820 [2006], *lv denied* 6 NY3d 854 [2006]).

Turning to the second indictment, defendant contends that the People's failure to comply with the notice requirements of CPL 710.30 regarding their intent to offer identification testimony at trial requires reversal of his convictions. It is well established that identification procedures that are merely confirmatory do not trigger the notice requirements of CPL 710.30 (*see People v Trimmer*, 30 AD3d 820, 822 [2006]; *People v Duplessis*, 16 AD3d 846, 848 [2005], *lv denied* 4 NY3d 853 [2005]). Moreover, "eyewitness testimony of a defendant's participation in a crime where the eyewitness has not previously made any out-of-court, police-initiated identification of the defendant in connection with *that crime* does not require a CPL 710.30 notice" (*People v Butler*, 16 AD3d 915, 916 [2005], *lv denied* 5 NY3d 786 [2005]).

Here, Sergeant Fred Whitsett testified at trial that he came into close contact with defendant several times on December 2, 2005. He further testified that he observed defendant take part in the sale of a controlled substance on February 2, 2006 and then identified defendant at trial as the person he had observed on that date. Whitsett's in-court identification of defendant was based on his February 2, 2006 observation which, in turn, was predicated upon his December 2, 2005 identification. Whitsett never participated in any police-initiated identification procedures, such as a showup or lineup, following his contact with defendant on December 2, 2005. Therefore, the CPL 710.30 notice requirement was inapplicable and County Court properly permitted Whitsett to testify as to his interactions with defendant and to identify him in court (*see People v White*, 73 NY2d 468, 474 [1989], *cert denied* 493 US 859 [1989]).

Defendant's final contention—that he received ineffective assistance of counsel in the defense of the second indictment—is also unavailing. This contention is almost entirely premised upon defense counsel's failure to discover, until the week before the commencement of the trial, that the People were in possession of incriminating surveillance videotapes of the undercover buy operation. We note that defendant's self-serving allegation—that had he known sooner of the existence of such evidence he would have accepted the People's original plea offer—is insufficient to establish that he would have done so (*see People v Thomson*, 46 AD3d 939, 941 [2007], *lv denied* 9 NY3d 1039 [2008]). In addition, it is evident from the record that, upon learning of the existence of the surveillance tapes a few days before trial, defendant made no inquiry as to whether the initial plea offer—or even any comparable offer—was still available. Significantly, when defense counsel became aware of the tapes, he made an appropriate motion to suppress them. Likewise, defense counsel made other apposite motions, requests for hearings and trial objections and conducted competent cross-examination of witnesses. Upon our review of the record, the totality of the circumstances in this case leads us to conclude that defendant received meaningful representation in accordance with constitutional requirements (*see People v Benevento*, 91 NY2d 708, 712 [1998]; *People v Baldi*, 54 NY2d 137, 146-147 [1981]; *see also People v Stultz*, 2 NY3d 277, 283 [2004]).

Mercure, J.P., Spain, Rose and Lahtinen, JJ., concur. Ordered that the judgment is affirmed.